The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Wanda Taylor. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The date of plaintiff's alleged injury is April 10, 1995.
2. On April 10, 1995 and at all relevant times, an employee-employer relationship existed between plaintiff and defendant-employer.
3. On April 10, 1995 and at all relevant times, plaintiff and defendant-employer were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
4. On April 10, 1995 and at all relevant times, defendant-employer was insured for workers' compensation with CIGNA Insurance Company and CIGNA Insurance Company was the carrier on the risk.
5. On April 10, 1995 and at all relevant times, plaintiff earned an average weekly wage which yields the maximum compensation rate for the year of 1995, or a compensation rate of $478.00.
6. The parties have stipulated, without the need for further authentication or verification, plaintiff's medical records into evidence.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. At the time of the hearing in this matter, plaintiff was a 50 year old man born September 6, 1946 who had completed high school. Plaintiff became employed with defendant-employer Black 
Decker in 1967 and worked for 3 1/2 years. Thereafter, plaintiff returned to defendant-employer in 1972 and continued to be so employed at the time of the hearing. Plaintiff is a Process Improvement Engineer and was employed as such on April 10, 1995.
2. On April 10, 1995, plaintiff was removing a number one winder and thereafter had to return a dolly weighing between 70 and 100 pounds. Plaintiff returned the dolly to the maintenance department. While lifting the dolly, plaintiff turned to the left and immediately heard a popping and felt pain in his lower back and right leg followed by numbness. Plaintiff removed the dolly from the lift, returned the fork truck and immediately went to First Aid and reported the incident. Plaintiff's report was logged on the accident log which was used by defendant-employer to complete workers' compensation injury forms. Plaintiff also mentioned his injury to Gary Ruffin who was working with him on that day as well as to Gene Jackson and Gary Williams. Plaintiff later reported the incident to Julius Hagen.
3. Plaintiff went home on April 10, 1995 and took old muscle relaxers which he already had. Plaintiff's symptoms continued to worsen thereafter and went from his back to his hip with tingling and numbness in his leg. Plaintiff presented to Dr. Tinsley W. Rucker, his family physician on July 12, 1995 complaining of hip pain. Dr. Rucker had an x-ray performed on the plaintiff and prescribed muscle relaxants for him. Thereafter, a MRI was ordered by Dr. Rucker. Following the results of the MRI, Dr. Rucker referred plaintiff to Dr. Bruce P. Jaufmann, a neurosurgeon.
4. On November 7, 1995, plaintiff presented to Dr. Jaufmann with low back pain and pain radiating into his hip, primarily with pain in his right leg. Plaintiff gave a history of pain beginning while he was twisting and lifting at work. Dr. Jaufmann reviewed plaintiff's MRI which disclosed a Grade I spondylolisthesis at L5-S1 and a protruding disc at the same level. Dr. Jaufmann prescribed non-steroidal anti-inflammatories, muscle relaxants and restricted plaintiff to no heavy lifting, twisting or pulling. Plaintiff returned on December 5, 1995 complaining of severe pain radiating down his right lower extremity and hypoesthesia. Plaintiff was switched to a steroidal anti-inflammatory. Plaintiff was seen by Dr. Jaufmann on January 11, 1996 and on March 11, 1996 with the same symptoms. On March 27, 1996, plaintiff underwent a myelogram. Physical therapy was prescribed for plaintiff on April 1, 1996. On May 9, 1996 plaintiff continued to experience severe right leg pain, and thereafter was given epidural steroid injections. On June 13, 1996, plaintiff continued to have numbness but had some improvement of his leg pain. On August 13, 1996, plaintiff was still experiencing right leg pain and had developed a mild limp. Thereafter, EMG and nerve conduction studies were conducted on plaintiff, and by October 1, 1996, Dr. Jaufmann and plaintiff discussed surgery.
5. On January 31, 1997, plaintiff underwent a compressive laminectomy at L5-S1, facetectomy and foraminotomy for his spondylolisthesis with spondylolysis and severe right S-1 radiculopathy.
6. Thereafter, plaintiff was followed by Dr. Jaufmann with improved leg pain but some back pain. Plaintiff was scheduled at the time of Dr. Jaufmann's deposition to begin physical therapy in approximately late June 1997. At the time of Dr. Jaufmann's deposition on April 22, 1997, plaintiff had not yet reached maximum medical improvement of his condition and was not yet able to work.
7. Plaintiff had spondylolisthesis which pre-dated his April 10, 1995 injury at work. However, plaintiff's right leg pain began after his injury. Plaintiff had not experienced difficulty with his job duties or in performance of his job prior to April 10, 1995.
8. On April 10, 1995, plaintiff suffered an injury by accident arising out of and in the course of his employment with defendant-employer as he was lifting and twisting with a 70 to 100 pound dolly.
9. As a direct and proximate result of this injury by accident arising out of and in the course of his employment on April 10, 1995, plaintiff suffered an aggravation, exacerbation or acceleration of his pre-existing spondylolisthesis at L5-S1. Plaintiff's S-1 radiculopathy was directly caused by plaintiff's April 10, 1995 injury by accident arising out of and in the course of his employment with defendant-employer. Plaintiff's pre-existing spondylolisthesis was accelerated, aggravated and/or exacerbated as a direct and proximate result of plaintiff's April 10, 1995 injury by accident arising out of and in the course of his employment with defendant-employer.
10. As a direct and proximate result of his work-related injury by accident on Aril 10, 1995, plaintiff has been unable to engage in physical activities required by his former job. As a result of his compensable injury on April 10, 1995, plaintiff has for certain periods been incapable of earning the same wages with defendant-employer or in any other employment. However, plaintiff has received salary continuation for the periods which he missed work.
11. At the end of plaintiff's healing period, it is anticipated that he will retain some percentage of permanent partial disability to his spine.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On April 10, 1995, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. N.C.G.S. § 97-2(6).
2. As a direct and proximate result of the plaintiff's work-related injury by accident on April 10, 1995, plaintiff sustained an aggravation, exacerbation and/or acceleration of his spondylolisthesis which resulted in leg pain and back pain. N.C.G.S. § 97-2(6).
3. As a result of plaintiff's April 10, 1995 compensable injury by accident, plaintiff at certain periods was incapable because of his work-related right leg and lower back pain and treatment thereof to earn the same wages which he was receiving at the time of his injury at the same or any other employment. N.C.G.S. § 97-29.
4. Plaintiff is entitled to temporary total disability compensation at the rate of $478.00 per week for the periods which he was out of work due to his low back and right leg pain, the treatment thereof, the surgery therefore and any recovery periods thereafter. N.C.G.S. § 97-29.
5. Defendant has paid certain wage continuation to plaintiff during the period of his inability to work due to his work-related injury. Defendant is entitled to credit for the same. Payments made by defendant-employer to plaintiff during the period of his disability may be deducted from the amount to be paid as compensation. However, these deductions shall be made by shortening the period during which compensation must be paid and not by reducing the amount of the weekly payment. Furthermore, the deduction shall be calculated from payments made by the employer in each week during which compensation was due and payable, without any carry-forward or carry-back of credit for amounts paid in excess of the compensation rate in any given week. Defendant-employer is entitled to a week per week credit not a dollar for dollar credit. N.C.G.S. § 97-42.
6. Plaintiff has not yet reached maximum medical improvement and plaintiff has not been assigned a permanent partial disability rating. N.C.G.S. § 97-31.
7. Plaintiff is entitled to have defendant-employer provide all medical treatment arising from this injury by accident to the extent it tends to effect a cure, give relief or lessen the period of disability. N.C.G.S. § 97-25.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendant-employer shall pay compensation to plaintiff at the rate of $478.00 per week for the days which he was out of work as a direct and proximate result of his April 10, 1995 compensable injury by accident, the pain resulting therefrom, medical treatment therefore or the recovery period. Portions of this compensation have accrued and shall be paid in a lump sum, subject to a reasonable attorney's fee approved in Paragraph 3.
2. Defendant-employer is entitled to a credit for salary continuation paid to plaintiff pursuant to N.C.G.S. § 97-47 at a week by week not dollar for dollar rate.
3. A reasonable attorney's fee in the amount of twenty-five percent of the compensation due plaintiff under Paragraph 1 of this Award is approved for plaintiff's counsel. For compensation which has accrued, the attorney's fee shall be paid by deducting from that sum and paying directly to plaintiff's counsel; thereafter, plaintiff's counsel shall receive every fourth compensation check.
4. To the extent that the same is reasonably designed to effect a cure, give relief or lessen the period of disability, defendant-employer shall pay all medical expenses incurred by plaintiff.
5. Defendant shall bear the costs. Furthermore, defendants are hereby ordered to pay an expert witness fee of $300.00 to Dr. Bruce Jaufmann in connection with his deposition taken in this matter on April 22, 1997.
6. Plaintiff's motion for the allowance of additional evidence is DENIED.
This the 30th day of June 1998.
 S/ ________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ ________________________ LAURA KRANIFIELD MAVRETIC COMMISSIONER
S/ _______________________ RENÉE C. RIGGSBEE COMMISSIONER
TJB/cnp/db